SHANNON, Judge.
The appellant, Robert C. Pelham Motel, Inc., seeks reversal of a judgment obtained by the appellee, Robert C. Pelham, before a jury in a contract action. Pelham sued the corporation on a promissory note in the amount of $3512.21, dated June 1, 1958. The appellant, in addition to its defenses, filed a counterclaim alleging that the plaintiff had received from October, 1958, until May, 1959, a series of checks in the net amount of $125.00 each, which checks were unauthorized, and for which he was indebted to the defendant.
It appears from the record that at the organization of Robert C. Pelham Motel, Inc., the organizing parties entered into an agreement under date of May 26, 1958, which provided, in part, as follows:
“4. It is agreed between the parties that ROBERT C. PELHAM has been the promoter who has instigated and endeavored his time and interest in the project and it is contemplated that he will continue to do so, therefore, the parties agree that he shall be paid by the corporation the sum of ONE HUNDRED TWENTY FIVE AND NO/100 ($125.00) DOLLARS per week commencing as of the date hereof until such time as the parties to this agreement decide to hire a manager. Said manager may be ROBERT C. PELHAM or some other person. If *728 MACEL C. HUFFMAN shall desire to become the resident manager of the motel upon the completion and commencement of operation, she shall be allowed to do so at her option and at such time the aforesaid salary to ROBERT C. PELHAM shall cease. He may be retained by the Board of Directors for further promotional work but the same shall be distinct from the resident manager salary.”
The motel was completed and opened on or about the 22d day of September, 1958, at which time Macel C. Huffman moved into the manager’s apartment and assumed the duties corresponding to such office. Robert C. Pelham continued to receive regular checks in the net amount of $125.00 until May 29, 1959, which checks were countersigned by Mrs. Huffman. There was apparently no meeting of the directors from the time of the agreement until May, 1959. Pelham testified that the directors hired him as resident manager, but when asked where and how he was hired as such, he referred to the agreement between the parties that we have set out. When asked if it were not true that Mrs. Macel C. Huffman moved into the motel and took over as resident manager, his testimony made her out as “resident clerk.” Mrs. Huffman’s testimony states: “I moved into the manager’s apartment and set up the office and then we opened our doors on the 22d of September, 1958.” It is clear that she had all of the duties and powers of the manager.
There was a pre-trial stipulation as to issues, which provided in part, as follows:
“B. That there is no issue with reference to the validity of the note, and that the only issue remaining is whether or not the amount of the note is set off by that amount Defendant claims was paid to Plaintiff as wages which were not authorized by the Corporate Defendant, and recovery by the Defendant of the excess.”
The appellant, at the conclusion of all of the testimony, made a motion for directed verdict, which was denied. While the record is silent, we assume that the reason for the trial court’s refusal of directed verdict was that the judge felt that the corporation was estopped to set up its counterclaim by reason of the fact that Macel C. Huffman, as secretary-treasurer of the corporation, countersigned the checks to Pelham. Pel-ham and Mrs. Huffman owned almost the same amount of stock in the corporation, and we can easily see how the trial court viewed the evidence at the trial. However, under the agreement, Robert C. Pel-ham was to receive $125.00 a week commencing as of the date of the contract, and was to receive $125.00 a week until such time as the parties to said agreement decided to hire a manager. This same agreement provided that Macel C. Huffman had the option to become the resident manager of the motel if she should so desire, at which time Pelham’s salary was to cease. That she did so desire is evidenced by the fact that she moved into the motel and proceeded to manage it. No meeting of the directors was held, nor was it necessary. As to Mrs. Pluffman’s countersigning the checks made out to Pelham, this was something that she was not authorized to do, and something, so far as the corporation was concerned, that was not within her discretion. Therefore, the amount of money paid to Pelham from the time that Mrs. Huffman moved into the motel as manager or clerk, until May 29, 1959, was money not authorized to be paid by the corporation. Pelham, aware of the terms of the agreement, knew that these were unauthorized payments, and cannot now be heard to dispute said agreement.
We therefore hold that the defendant’s motion for directed verdict as to its counterclaim should have been granted, and hence, the trial court was in error in- submitting this case to the jury. In so holding, we note 2 Fla.Jur., Appeals, Sec. 302, which states, in part:
“ * * * [I]n reviewing an order denying a motion for directed verdict made after the close of plaintiff’s case *729 and a like order made at the close of all the evidence, the question before the court is simply whether the evidence, when interpreted in the light most favorable to plaintiff, was sufficient to require a submission to the jury of the question of defendant’s liability.”
See also, Mellet v. Henry, Fla.App.1959, 108 So.2d 69; and Atlantic Coast Line R. Co. v. Savary, Fla.1953, 64 So.2d 562. After considering all of the evidence from below, (Brown v. Householder, Fla.App.1961, 134 So.2d 801) in the light most favorable to the plaintiff-appellee, (A. E. Finley & Associates, Inc. v. Medley, Fla.App.1962, 141 So.2d 613) we hold that the verdict below is against the manifest weight of the evidence, and that the case should not have been submitted to the jury. We therefore instruct the trial court to enter judgment on the appellant’s counterclaim in accordance with its motion for directed verdict.
Reversed.
SMITH, C. J., and McNATT, JOHN M., Associate Judge, concur.